**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON**

| | | |
|---|---|---|
| CLYDE R. WEBSTER, | ) | CASE NO. 1:25-cv-01547-SO |
| | ) | |
| Petitioner, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | REUBEN J. SHEPERD |
| WARDEN TOM WATSON, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |
| | ) | |

I.      **Introduction**

On July 2, 2025, Petitioner Clyde R. Webster ("Webster") filed a petition for writ of habeas corpus under 28 U.S.C. § 2254.[1] (ECF Doc. 1). On August 4, 2025, the matter was assigned to me under Local Rule 72.2. for issuance of a report and recommended decision. (Non-document entry of Aug. 4, 2025).

On October 3, 2025, Respondent Warden Tom Watson ("Respondent") filed his Return of Writ, answering the petition and including relevant portions of the state court record. (ECF Doc. 5). My initial order (ECF Doc. 4) gave Webster 30 days to respond with his Traverse; on November 19, 2025, after that deadline had passed, I gave Webster an extension and established a final deadline of December 19, 2025 for filing his Traverse (non-document entry of Nov. 19, 2025). Webster did not respond and has not filed a Traverse. The matter is therefore ripe.

---

[1] Federal district courts apply the prison mailbox rule, accepting filings as of the date placed in the prison mail system. *See Houston v. Lack*, 487 U.S. 266, 270 (1988).

Respondent notes that on July 12, 2025, Webster was placed on post-release control. (ECF Doc. 5, p. 1 (citing to Ohio Dept. of Rehab. & Corr. Website for Webster's personal identifier A794437, https://appgateway.drc.ohio.gov/OffenderSearch/Search/Details/A794437). At the time of this writing, the provided link reveals that Webster is no longer under any supervision.[2]

## II.      Factual Background

The Ohio Court of Appeals, Ninth Appellate District, Medina County, set forth the facts of this case on direct appeal. These factual findings are presumed correct unless Webster rebuts this presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). The Ninth District presented the facts as follows:

> {¶2} According to a retail store's loss-prevention employee, she watched a man leave the store with a television in his cart without paying for it. When she approached the man, he abandoned the cart, got into a red Monte Carlo car, and drove away. A police officer who was responding saw the car exiting the parking lot and attempted to conduct a traffic stop, but the driver refused to stop. The officer pursued the car for a short while but called off his pursuit because traffic volume and poor road conditions created a heightened safety risk. A second officer saw the car a little while later, but it again refused to stop.

> {¶3} When police contacted the registered owner of the red Monte Carlo, he said that he had sold the car to his aunt but had not had the opportunity to transfer the title to her yet. The aunt said that she had let her boyfriend, Mr. Webster, borrow the car one day for what she thought was a brief errand, but he never returned it. Her nephew, therefore, reported the car stolen.

> The owner's aunt, Mr. Webster's girlfriend, saw Mr. Webster still driving the car one evening, but he refused to stop for her. Comparing Mr. Webster's Bureau of Motor Vehicles photograph to the store's surveillance camera footage, officers determined that Mr. Webster was the individual who attempted to steal the television.

---

[2] Section 2254(a) permits federal courts to entertain habeas applications only "in behalf of a person in custody pursuant to the judgment of a State court." However, release from custody does not moot Webster's petition, as he was in custody at the time of filing. *See generally Green v. Arn*, 839 F.2d 300 (6th Cir. 1988) (determining a petitioner's release from custody and parole does not moot a habeas corpus action).

(ECF Doc. 5-1, pp. 67-68); *see also State v. Webster*, 2023 WL 4862695, *1 (Ohio Ct. App. July 31, 2023).

### III. State Court History

#### A. State Conviction

On February 13, 2019, a grand jury indicted Webster on two counts: Count One: Receiving Stolen Property, a fourth-degree felony under O.R.C. § 2913.51(A)(C)); and Count Two: Failure to Comply with an Order or Signal of a Police Officer, a third-degree felony under O.R.C. § 2921.331(B)(C)(5)(a)(ii). (ECF Doc. 5-1, pp. 3-4).

After jury trial, on November 9, 2022, the jury found Webster guilty of both counts and returned a special finding on Count Two that Webster's driving caused a substantial risk of serious physical harm to persons or property. (*Id.* at p. 6).

On November 14, 2022, the trial court sentenced Webster to 24 months in prison on Count Two, and 12 months in prison on Count One, to be served prior to Count One pursuant to O.R.C. § 2921.331(D), and to be served consecutively, resulting in an aggregate 36-month prison term. (*Id.* at pp. 7-8). In addition, the state trial court sentenced Webster to mandatory post-release control of up to three years but not less than one year. (*Id.* at p. 8). Webster was awarded 49 days of jail-time credit. (*Id.*).

#### B. Direct Appeal

Webster filed a notice of appeal to the Ninth District on December 2, 2022. (*Id.* at p. 10). On March 20, 2023, Webster filed his appellant's brief, raising the following six assignments of error:

> FIRST ASSIGNMENT OF ERROR: APPELLANT'S CONVICTIONS FOR FAILURE TO COMPLY WITH AN ORDER OR SIGNAL OF A POLICE OFFICER AND RECEIVING STOLEN PROPERTY ARE AGAINST THE

MANIFEST WEIGHT OF THE EVIDENCE. THE IDENTIFICATION OF APPELLANT WAS AGAINST THE WEIGHT OF THE EVIDENCE.

SECOND ASSIGNMENT OF ERROR: APPELLANT'S CONVICTION FOR FAILURE TO COMPLY WITH AN ORDER OR SIGNAL OF A POLICE OFFICER IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. NO EVIDENCE WAS PRESENTED TO SHOW APPELLANT WAS THE DRIVER.

THIRD ASSIGNMENT OF ERROR: APPELLANT'S FELONY CONVICTION FOR FAILURE TO COMPLY WITH AN ORDER OR SIGNAL OF A POLICE OFFICER IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. THE EVIDENCE DOES NOT SHOW THAT APPELLANT CREATED A SUBSTANTIAL RISK OF SERIOUS PHYSICAL HARM AS REQUIRED UNDER THE STATUTE.

FOURTH ASSIGNMENT OF ERROR: APPELLANT RECEIVED CONSTITUTIONALLY INEFFECTIVE ASSISTANCE OF COUNSEL WHERE SHE DID NOT OBJECT TO HIGHLY PREJUDICIAL AND IRRELEVANT TESTIMONY REGARDING APPELLANT WITH THE RED MONTE CARLO IN AKRON. FURTHER, SHE WAS INEFFECTIVE FOR NOT OBJECTING TO THE TESTIMONY ON 404(B) GROUNDS.

FIFTH ASSIGNMENT OF ERROR: THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DID NOT CONSIDER THE FACTORS LISTED IN R.C. 2921.331(C)(5)(b) WHEN SENTENCING DEFENDANT.

SIXTH ASSIGNMENT OF ERROR: THE TRIAL COURT ERRED IN NOT GRANTING APPELLANT MORE JAIL-TIME CREDIT FOR TIME HE SAT IN PENNSYLVANIA ON THE OHIO FELONY WARRANT.

(*Id.* at pp. 19-20). The State filed its brief on April 5, 2023. (*Id.* at pp. 43-66). On July 31, 2023, the Ninth District Court of Appeals affirmed the convictions and sentence. (*Id.* at 67-78; *State v. Webster*, 2023 WL 4862695, *1 (Ohio Ct. App. July 31, 2023). Webster did not later appeal to the Ohio Supreme Court or the United States Supreme Court.

## C. Post-Conviction

On April 11, 2024, Webster, appearing pro se, filed an untimely Ohio App. R. 26(B) application to reopen. (ECF Doc. 5-1, pp. 79-88). In it, he asserted three assignments of error:

4

First Assignment of Error: Appellant's conviction for Receiving Stolen Property was against the manifest weight of evidence and contrary to Law, in Violation of Rights to Due Process Clause to proof beyond a reasonable doubt with sufficient evidence to essential elements of the crime. Consent was given by a person authorized, vehicle was not obtained by theft.

Second Assignment of Error: Appellant's conviction for Failure to Comply with an Order Or Signal of Police Officer was against the manifest weight of evidence and contrary to Law, in Violation of Rights to Due Process Clause to proof beyond a reasonable doubt with sufficient evidence to essential elements of the crime. No evidence to the identity of the driver of vehicle was produced.

Third Assignment of Error: Trial Court committed Prejudice and Plain Error Misconduct by failing to grant a Judgment of Acquittal, pursuant to Crim. R. 20(A) on the charges, and thereafter entering a judgment on conviction of the offenses; Receiving Stolen Property and Failure to Comply; as those charges were not supported by sufficient evidence, in Violation of Appellant's Rights to Due Process of Law. As Guaranteed by the 14th Amendment to the U.S. Constitution and Article 1 section 10 Ohio Constitution.

(*Id.* at pp. 82-87). The State opposed on May 7, 2024. (*Id.* at pp. 149-58). On October 28, 2024,

the Ninth District Court of Appeals denied Webster's application for reopening, finding that he

had not established good cause for the delay. (*Id.* at pp. 159-61). Webster did not later appeal.

## IV.     Federal Habeas Corpus Petition

In his Petition, Webster asserts the following grounds:

Ground One: Petitioner's 5th, 6th, and 14th Amendment Rights were violated by the trial court when it convicted him based on insufficient evidence, also giving improper and inaccurate jury instructions.
Supporting Facts: state did not meet it's [*sic*] burden to the essential elements of the crimes for a conviction and the trial court gave improper and inaccurate jury instructions when defining "owner" and omitting the element of "operator", committing plain error and actual prejudice.

Ground Two: Petitioner's 6th and 14th Amendment rights were violated when he was denied effective assistance of appellate counsel.
Supporting Facts: Appellate counsel committed acts of gross negligence, willful deceit, and blatant lies during direct appeal, when Petitioner had a constitutional right to counsel. Appellate counsel's actions were in direct violation of the professional standards of conduct.

(ECF Doc. 1, pp. 5-7).

5

## V.      Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, PL 104-132, April 24, 1996, 110 Stat 1214, 110 Stat. 1214 ("AEDPA"), applies to Webster's petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). "As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). This is so because "[s]tate courts are adequate forums for the vindication of federal rights" and AEDPA thus acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). As a result, AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal citation and quotation omitted).

Under 28 U.S.C. § 2254, federal courts may "entertain only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States'" and in most instances, federal courts may not grant habeas relief "unless . . . the applicant has exhausted state remedies." *Cullen*, 563 U.S. at 181, quoting 28 U.S.C. §§ 2254(a), (b), (c). Further, if an application for writ of habeas corpus involves a claim that was "adjudicated on the merits in State court proceedings," the application shall not be granted . . . unless the adjudication of the claim —

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2); *Cullen*, 563 U.S. at 181; *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007). The burden of proof rests with the petitioner. *Cullen*, 563 U.S. at 181.

First, clearly established federal law for purposes of AEDPA review includes "the holdings, as opposed to dicta, of [U.S. Supreme Court] decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is contrary to U.S. Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Court on a question of law or if the state court decides a case differently than the Court despite both cases having materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *White v. Mitchell*, 431 F.3d 517, 523 (6th Cir. 2005), *cert. denied*, 549 U.S. 1047 (2006). Even so, a state court does not act contrary to clearly established federal law where U.S. Supreme Court precedent is ambiguous or otherwise unavailable. *See, e.g.*, *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state court decision is an unreasonable application of Supreme Court precedent where the state court's adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; see also *Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000), *cert. denied*, 531 U.S. 1089 (2001). Under § 2254(d)(2), a state court's factual determination will stand unless it is objectively unreasonable in light of the evidence presented in state court. *Harrington v. Richter*, 562 U.S. 86, 100 (2011). "[A] federal habeas court may not grant relief simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 365.

Next, "a determination of a factual issue made by a State court shall be presumed to be correct. [Petitioner] shall have the burden of rebutting the presumption of correctness by clear

and convincing evidence." 28 U.S.C. § 2554(e)(1). And, as the U.S. Supreme Court has repeated, "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion." *Burt*, 571 U.S. at 18. Federal courts must also defer to a state court's judgment on issues of state substantive and procedural law. *Murray v. Carrier*, 477 U.S. 478, 491 (1986); *Engle v. Isaac*, 456 U.S. 107, 128-29 (1982).

In all, federal habeas corpus relief is a "guard against extreme malfunctions in the state criminal justice systems," and is different in kind from the relief available in direct appeal. *Harrington*, 562 U.S. at 102-03; *see also Brown v. Davenport*, 596 U.S. 118, 133 (2022) (internal quotation omitted). Thus, to obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

When a properly presented federal constitutional claim was not adjudicated on the merits in the state courts, the reviewing federal court must apply the pre-AEDPA standard, reviewing de novo questions of law and mixed questions of law and fact. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007) ("When the state court has not assessed the merits of a claim properly raised in a habeas petition, the deference due under AEDPA does not apply.").

### A. Procedural Barriers to Federal Habeas Corpus Review

Before coming to federal court, a state habeas petitioner must overcome certain procedural barriers, including exhaustion of state remedies and procedural default. *See Daniels v. United States*, 532 U.S. 374, 381 (2001). A federal court sitting in habeas review may review claims that were evaluated on the merits by the state court. But claims that were not evaluated by a state court, either because they were never fully presented to the state court (*i.e.*, state court

remedies were unexhausted) or because they were not properly presented to the state court (*i.e.*, they are procedurally defaulted) are unavailable for federal habeas corpus review. *Bonnell v. Mitchel*, 301 F. Supp. 2d 698, 722 (N.D. Ohio 2004), *aff'd sub nom. Bonnell v. Mitchell*, 212 F. App'x 517 (6th Cir. 2007).

### B.      Exhaustion

A petitioner must first give the state courts a "*fair*" opportunity to act on his claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) (emphasis in original). For a claim to have been fairly presented, the factual and legal basis of the claim asserted by the petitioner must have been raised at each and every stage of state review. *Wagner v. Smith*, 581 F.3d 410, 418 (6th Cir. 2009); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). It is not enough for the claim raised in state court to be "somewhat similar" to the one raised in the habeas petition or implicate the same facts; the state court must have been called on to apply the legal principles of the claim now presented to the federal courts. *Jalowiec v. Bradshaw*, 657 F.3d 293, 304 (6th Cir. 2011).

The petitioner also must have presented their "claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law." *Williams*, 460 F.3d at 807 (quotation marks omitted). In this Circuit, this can be done in one of four ways:

(1)      reliance upon federal cases employing constitutional analysis;

(2)      reliance upon state cases employing federal constitutional analysis;

(3)      phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or

(4)      alleging facts well within the mainstream of constitutional law.

*McMeans*, 228 F.3d at 681 (paragraph breaks added).

Failure to exhaust occurs where state court remedies are still "available at the time of the federal petition." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). This failure to exhaust

9

can also lead to a petitioner procedurally defaulting his claims. If the petitioner has not fully utilized his state remedies and has no legal mechanism to do so now, the claim he failed to present is procedurally defaulted, and this Court cannot act on the claim either. *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); *Williams v. Anderson*, 460 F.3d 789, 809 (6th Cir. 2006).

### C. Procedural Default

The procedural default doctrine limits federal review if the petitioner has failed to follow the state's procedural requirements for presenting his or her claim in state court. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991). This doctrine flows from the insight that courts must have the authority to insist that "defendants present their arguments on time and according to established procedures." *Benton v. Brewer*, 942 F.3d 305, 307 (6th Cir. 2019). Thus, a federal habeas court will not consider a habeas petition if "the last state-court judgment denying relief on the claim rests on a procedural state-law ground that is 'independent of the federal question and is adequate to support the judgement.'" *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013) (quotation marks omitted).

This Circuit consults a four-part test to determine whether a petitioner has procedurally defaulted a claim. A petitioner procedurally defaults a claim if: (1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforced the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Because the procedural-default bar to federal habeas review is harsh, courts have created safety-valves to permit review in limited circumstances. A petitioner can obtain review of

10

procedurally defaulted claims if they show: (1) "cause," *i.e.*, that some external factor kept him from complying with the state rule or fairly presenting his claim; and (2) "prejudice," *i.e.*, that, assuming the petitioner's constitutional claim has merit, there is a reasonable probability that a different verdict would have resulted if the alleged constitutional violation hadn't occurred. *Coleman*, 501 U.S. at 750; *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012). A petitioner can also obtain review of a procedurally defaulted claim if the procedurally defaulted claim is based on new evidence that the petitioner was factually innocent of the crime of conviction. *See Coleman*, 501 U.S. at 750 ("fundamental miscarriage of justice" exception to procedural default); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim would establish that the petitioner was "actually innocent."). But "[A]ctual[] innocen[ce]" means "factual innocence, not mere legal insufficiency."; *Bousley v. United States*, 523 U.S. 614, 623 (1998). To overcome procedural default, an actual innocence claim must be supported by "new reliable evidence . . . that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Moreover, because Petitioner is appearing pro se, the allegations in his Petition must be construed in his favor, and his pleadings are held to a less stringent standard than those prepared by counsel. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). However, this Court may dismiss the Petition at any time or make any such disposition as law and justice require, if it determines the Petition fails to establish adequate grounds for relief. *See Lonchar v. Thomas*, 517 U.S. 314, 325 (1996); *see also* 28 U.S.C. § 2243. This can include cases where a petitioner fails to exhaust state court claims. *See Rose v. Lundy*, 455 U.S. 509, 522 (1982) (dismissal may be necessary where a § 2254 petition contains both exhausted and unexhausted state court claims); *cf. Rhines v. Weber*, 544 U.S. 269, 279 (2005).

11

**VI.     Discussion**

Respondent first asserts that Webster's federal habeas petition is time-barred, that he is not entitled to statutory tolling, and that equitable tolling is not warranted. (ECF Doc. 5, pp. 6-14). Further, Respondent argues, Webster's claims are procedurally defaulted for failure to exhaust his remedies in state court. (*Id.* at pp. 17-26). Webster did not respond with a Traverse.

As is discussed in more detail below, I agree with Respondent that Webster's failure to pursue his remedies at each and every level in state court results in both an untimely federal habeas petition, and procedurally defaulted claims for failure to exhaust. I therefore recommend the District Court dismiss his petition.

Respondent also asserts that Ground One, asserting the trial court erred in its jury instructions, is a state law claim and is not a cognizable federal claim. (*Id.* at pp. 15-17). Respondent further asserts that Webster's petition should be denied because his claims lack merit. (*Id.* at pp. 29-40). Because I recommend dismissal due to timeliness and procedural default, I do not reach the merits of Webster's grounds for relief, nor the cognizability of those claims here.

**A.     Timeliness**

As Respondent presents, Webster's conviction became final 45 days after the Ninth District Court of Appeals affirmed the trial court's judgment, *i.e.*, on September 14, 2023. (ECF Doc. 5, p. 8). Under AEDPA and absent tolling, Webster would have one year thereafter to file his petition. (*Id.*). Webster waited 209 days to file his delayed application to reopen his appeal. According to Respondent's calculations, the statute of limitations expired on April 2, 2025. (*Id.*). Because Webster did not file the present petition until July 2, 2025, his federal habeas petition is untimely. (*Id.*).

I agree with Respondent that Webster's petition is untimely.

As stated, AEDPA applies to Webster's petition for writ of habeas corpus. *Lindh*, 521 U.S. at 336. And AEDPA sets several limits on the power of a federal court to grant a Section 2254 petition for a prisoner in state custody. *See Cullen*, 563 U.S. at 181. One such limit is the one-year statute of limitations requiring a petitioner file their federal habeas petition within one year after their direct review concludes, unless that time is tolled. 28 U.S.C. §§ 2244(d)(1)(2). As that provision states, the statute of limitations runs

> from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* §§ 2244(d)(1)(A)-(D). The statute of limitations is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending[.]" *Id.* § 2244(d)(2).

Here, the initial period for Webster's direct review concluded 45 days after the Ninth District issued its decision on his direct appeal on July 31, 2023. (ECF Doc. 5-1, pp. 67-77). Therefore, the one-year clock initially began to run on September 14, 2023. However, Webster filed his delayed application for reopening on April 11, 2024. (*Id.* at p. 79). The Sixth Circuit holds that a delayed application to reopen is part of the direct review process and thus the "appropriate period of limitations in this circumstance is found in 28 U.S.C. § 2244(d)(1)[.]"

*Penson v. Collins*, 27 F. App'x 369, 371 (6th Cir. 2001). However, even though a delayed appeal may toll the statutory limitations period, it does not cause it to run anew when the state court denies the motion. *Searcy v. Carter,* 246 F.3d 515, 519 (6th Cir. 2001). Therefore, the limitations period ran for 209 days, was tolled for the period from when Webster filed the delayed application and until the Ninth District denied his appeal as without good cause for its untimeliness on October 28, 2024. (ECF Doc. 5-1, pp. 159-60). Webster therefore had until April 2, 2025 to file his petition in this Court. He did not, (ECF Doc. 1, p. 15), and therefore his petition is untimely, absent equitable tolling.

But AEDPA's one-year statute of limitations does not present a jurisdictional bar; an untimely petition may yet receive equitable tolling. *Borns v. Chrisman*, 167 F.4th 335, 343 (6th Cir. 2026); *see also Holland v. Fla.*, 560 U.S. 631, 649 (2010). "'[A] petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 560 U.S. at 649, quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

However, equitable tolling is applied "sparingly." *Borns*, 167 F.4th at 346, quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010). It is available only in the extraordinary circumstance – a "garden variety claim of excusable neglect" leading to "a simple miscalculation" of the filing deadline will not equitably toll an untimely petition. *Holland*, 560 U.S. at 651-52. This is particularly so where the delayed petition is months late. *Borns*, 167 F.4th at 346 (denying equitable tolling after a 364-day delay in the state postconviction filing caused the federal habeas petition to be untimely); *see also, e.g., Greene v. Lafler*, 457 F. App'x 485, 487

14

(6th Cir. 2012) (denying equitable tolling after a five-month delay in filing the federal habeas petition).

Webster makes no argument before this Court to demonstrate that equitable tolling should apply to his petition. Furthermore, he has demonstrated a lack of diligence, both in pursuing his claims in state court, as well as in his petition here. Webster did not appeal to the Ohio Supreme Court, nor thereafter, and he filed a delayed application for reopening in state court. Here, he did not respond with a Traverse. Therefore, extraordinary circumstances do not exist to warrant a grant of equitable tolling.

I therefore find that equitable tolling does not apply to save Webster's petition, and recommend the District Court dismiss the petition as untimely.

### A. Actual Innocence does not apply to excuse Webster's untimely filing.

A petition's timeliness is not a threshold inquiry. *See McQuiggin v. Perkins*, 569 U.S. 383, 400 (2013). A petitioner can also obtain review of a late-filed petition if his claims are based on new evidence that he was factually innocent of the crime of conviction. *See id.* at 392-94 (describing that a "fundamental miscarriage of justice" may give cause to excuse late filing); *see also Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (A "fundamental miscarriage of justice" can occur only when the otherwise-defaulted claim would establish that the petitioner was "actually innocent."). Yet demonstrating actual innocence is a demanding standard. *See Bousley v. United States*, 523 U.S. 614, 623 (1998). "[A]ctual[] innocen[ce]" means "factual innocence, not mere legal insufficiency." *Id.* Moreover, an actual innocence claim must be

supported by "new reliable evidence . . . that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Webster has not demonstrated he is actually innocent of the crimes of conviction. He does not assert his factual innocence, rather, he asserts only the legal insufficiency of the evidence at trial. (*See generally* ECF Doc. 1). He does not produce new evidence of the type to demonstrate he was actually innocent. (*See id.*). This is not enough to overcome AEDPA's statute of limitations on either statutory or equitable grounds.

I therefore recommend the District Court dismiss Webster's petition as untimely.

### B. Exhaustion

Furthermore, Webster has not properly exhausted any of his claims.

A petitioner must first give the state courts a "*fair*" opportunity to act on his claims. *O'Sullivan*, 526 U.S. at 844. (emphasis in original). This includes raising each ground at each and every stage of state review. *Wagner*, 581 F.3d at 418; *McMeans*, 228 F.3d at 681. In Ohio, this includes delayed appeal to the Ohio Supreme Court. *See Allen v. Perini*, 424 F.2d 134, 140 (6th Cir. 1970).

Procedural default of unexhausted claims occurs where the opportunity to raise that claim in state court has passed. *O'Sullivan*, 526 U.S. at 853-54. In those circumstances, a federal court sitting in habeas review looks to the last "reasoned state judgment rejecting a federal claim" to determine procedural default. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). However, such reasoning does not apply where the claims were not fairly presented to the highest state court. *See Harris v. Reed*, 489 U.S. 255, 263 n.9 (1989). And a federal court need not require the

petitioner return to state court where, as here, it is clear any claim would be procedurally barred. *Id.*

Here, Webster did not raise any claims before the Ohio Supreme Court and therefore his claims are unexhausted for failure to fairly present to each and every level for state court review. It is unnecessary to require him return to state court to exhaust these claims, as it appears that any claim would be procedurally barred, since Webster is both delayed, and because it appears he is no longer under supervision. Following *Harris*, I determine analysis of procedural default for his claims is unnecessary where he did not raise such claims before the state court and where I have no state court determination to review on the matter. I therefore recommend, in the alternative, that the District Court dismiss his petition for failure to exhaust.

## VII.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(1)(A), this Court will grant a certificate of appealability ("COA") for an issue raised in a § 2254 habeas petition only if the petitioner has made a substantial showing of the denial of a federal constitutional right. *Cunningham v. Shoop*, 817 F. App'x 223, 224 (6th Cir. 2020). A petitioner satisfies this standard by demonstrating that reasonable jurists "could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (internal quotation marks omitted); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

When a claim is denied on procedural grounds, the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. "Where a plain procedural bar is

17

present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted." *Id.* at 486.

Here, it is well-established that a petitioner must file a petition within one year of the conclusion of direct review, unless statutorily tolled. 28 U.S.C. §§ 2244(d)(1)(A), (d)(2). And a petitioner is entitled to equitable tolling only if he shows he has been pursuing his rights diligently and that an extraordinary circumstance stood in his way to prevent timely filing. *Pace*, 544 U.S. at 418; *Holland*, 560 U.S. at 649-50. And untimely filing may be excused if the petitioner can show they are actually innocent, supported by new reliable evidence not presented at trial. *Schlup*, 513. U.S. at 324.

Furthermore, a petitioner is required to fairly present his claims to each and every level of state court for review, including delayed appeal to the Ohio Supreme Court, or else his claims will be procedurally defaulted for failure to exhaust. *O'Sullivan*, 526 U.S. at 844; *Wagner*, 581 F.3d at 418; *McMeans*, 228 F.3d at 681; *Allen*, 424 F.2d at 140.

Thus, if the District Court accepts my recommendations, Webster will not be able to show that my conclusions in this Report and Recommendation are debatable. I therefore recommend that no certificate of appealability issue.

## VIII.  Conclusion

Webster's petition was filed after AEDPA's one-year statute of limitations had run, and good cause does not exist to excuse the delay. He has not demonstrated actual innocence. I therefore recommend the District Court dismiss Webster's habeas corpus petition as untimely.

18

Further, and in the alternative, I recommend the District Court dismiss because Webster has failed to fairly present his claims to every level of state court for review, and his claims are therefore unexhausted.

I further recommend that no certificate of appealability issue.

Dated: June 16, 2026

REUBEN J. SHEPERD
UNITED STATES MAGISTRATE JUDGE

## OBJECTIONS

### Objections, Review, and Appeal

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge.  Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C.§ 636(b)(1); Local Rule 72.3(b).  Properly asserted objections shall be reviewed de novo by the assigned district judge.

\* \* \*

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, \*2 (W.D. Ky. June 15, 2018) quoting *Howard*. The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).

19